appellate by David Smith. All right, Mr. Urban, you may proceed. Thank you, Your Honor. My name is John Urban. I'm an attorney in Wilmington, Illinois, and I represent the appellant, Mr. Ron Hyming. This is the second time that this case and these parties have been before this court. The first time it was before the court, the court vacated the judgment against my client in the amount of $917,000 in fraud for damages. And the court remanded the case for further proceedings. This court gave instructions to the trial court in regards to how it should handle the case on remand and instructed the trial court to make specific findings as to the appropriate deposits at issue. In regards to items concerning fraud, this appellate court sent it back to the trial court to determine, for this court to evaluate the proper amount of damages for fraud issues. And the court instructed the trial court to consider funds actually received by the plaintiff, Ron Hyming, from sub lessees. This was a strip center that Ron Hyming had conveyed to the defendant, Noman Boyd, with the plan to acquire the property back within about 12, 15 months. There was a contract entered into to do that. However, it was alleged by Mr. Noman Boyd that Ron Hyming violated the conditions of the option agreement and other agreements in regards to rent. Ron Hyming had two corporations that he owned that were renting space at the strip center. And the allegation was that against the written contract, Ron Hyming subleased the property, two of the units that Ron Hyming's corporations owned. And according to the contract that was drafted by Noman Boyd, that Ron Hyming was prohibited from subleasing it. And if he did sublease it, any rent had to be turned over to Mr. Noman Boyd. So it was alleged that that took place and he leased it and didn't turn it over. So it went back to the trial court, of course. And at the trial court, no new evidence was taken upon remand. The parties argued as to the proper amount of damages for the contract and for the trial itself, before it went to the trial court the first time, the defendant claimed that he was owed certain amounts of money for rent, additional rent, holdover rent, and late fees. The amount that he claimed was owed for those items by one of the corporations called La Hacienda was the amount of $57,000 and some dollars and cents. But $57,000 was owed. This is what Noman Boyd testified was owed him. And that's the amount that went on appeal to the appellate court. After it had gone to the appellate court and was remanded back, Noman Boyd did not argue Exhibit 110A, which was a demonstrative exhibit because that's the exhibit off of which Mr. Noman Boyd testified the money was owed, but instead chose an Exhibit 110. Exhibit 110 was never admitted into evidence. The numbers that Mr. Noman Boyd wants to use to show the damages were the same as the ones on 110A, and it's our contention that 110 should not have been used to determine what the damages were in this particular case. And it was based upon that. It's our contention that the judgment of the trial court was basically without basis in the trial court relied upon an Exhibit 110, which was never in evidence. Reviewed the judgment order of the trial court that determined that the judgment against La Hacienda was in the nature of about $435,000, maybe more than that, $569,000, I believe about $350,000. And because of that, the trial court should not have used Exhibit 110. Actually, there's two Exhibits 110. There's another one. The other one was for three months in 2018. The Exhibit Mr. Noman Boyd chose for damages was Exhibit 110 for only three months. This exhibit did not include late fees. It only showed additional rent and holdover rent. It left out late fees. The other Exhibit 110 and 110A all included late fees in the calculations of what was owed. So I believe the defendant, Noman Boyd, believed that he could insert his own new version of late fees into this in order to raise the amount of the judgment from a possibility of $57,000 up to $435,000. It should be interesting that the Exhibit 110A that was utilized at the trial all indicated that there was late fees due and owing, and it was calculated at the basis of $50 per late payment. It wasn't based on a 5% recurring interest rate. It's our contention that it involves compounding. Under the case law, under the 3rd District going all the way back to at least 2001, in regards to one case that I cited, and actually there's two now, you cannot keep charging an interest rate on the same non-payment month after month after month. You can only charge at one time, charge. That's not what the defendant in this case has done. They charge 5% each month. Not only that... Quick question, Mr. Irwin. You're saying he did that on remand. At the trial, his Exhibit, his Exhibit was 110A that just asked for $50. The $50 late payment came to like $3,600. Correct. So there's lots of other items in here in regards to his damage claims that are incorrect. In regards to the amount of additional rent owing, the contract itself was amended by an addendum which provides that the only charges for additional rent would be taxes, real estate taxes. And insurance. But in some of these years, Mr. Nolenboy has included other charges which should not be allowed because it's not in the contract. Additionally, the contract, I believe language shows that the interest should be that the taxes rather start in the year 2014. You do not start paying 2013 taxes once you start renting a parcel of property in late May of 2014. I think that's rather unheard of that you'd be stuck with that and that the language of the contract, the addendum does not show that. The contract shows when you read it as a whole that 2013 is used as a reference to establish that the 2014 taxes is the current year. And in the current year of 2014, you will base the 2014 taxes that the plaintiff is required to pay on a monthly basis, divided into 12, based upon the previous year's 2013 taxes. So that's the reason why the 2013 is there. And it's probably put there because of the fact that prior to this addendum being signed, and it's all in the record, the defendant had gone to the Supervisor of Assessments Office and gotten a substantial reduction in the assessed value of the property. Meaning that the actual taxes that were going to be due for 2014 payable in 2015 were going to be substantially less. So I believe Mr. Nomenvoy wanted to freeze the amount that was going to be paid in 2015 for the 2014 taxes, not based upon the assessment, but rather on the prior year's taxes, which were at a higher rate. And I know there's quite a bit of language in the Nomenvoy's brief that states that no, 2013 was supposed to be included. I don't believe that's clear at all under the addendum. And at the trial of the case, the defendant, Nomenvoy, actually testified. He agreed that the way that the addendum is written, he was not supposed to charge taxes for 2013, but he did. So that should not be allowed. And he testified that those tenants should be given a reduction for that year off of the amount that they had paid. And that amount was $19,040. So any sort of judgment and damages for contract damages should be reduced by at least that amount. I filed memoranda and other items in regards to this with the court to bring out these issues, but it was never ruled upon. So the case cited by the appellant, Perfection Corp. v. Lock and Bar Corporation, states that it's incumbent upon the person who seeks damages, they have the burden to establish that they sustain, not only that they sustain damages, but they have to establish a reasonable basis for the computation of damages. And I don't believe that you can reasonably compute damages that you suffer by including items that you're not entitled to include. And that's what was done here. In the document submitted to the trial court, as I said, was never reviewed or ruled upon. I included methods of determining how much money was either due or not due from Juan Hyman. And that was never ruled upon. So once again, a lot of what the appellant court ruled upon was not followed in the trial court, and a lot of it had to do with the defendant submitting this Exhibit 110, which is not evidenced. It was not admitted. And a lot of the sites placed in the brief of the appellant, the sites are not correct. So they cite to other things, or they cite to items that are not admitted. So I have that contained in my brief. Mr. Irvin, thank you very much. You will have the opportunity to rebuttal. Thank you. Mr. Smith. Thank you. May it please the court. I am David Smith. I represent the appellee, Mr. Norman Boyd, in the case before you today. A couple of things that I would like to address with the panel. First, as a preliminary matter, and counsel had mentioned it recently, that counsel had mentioned specifically at page 10 of his reply brief, and I appreciate him bringing this up, that certain citations contained on pages 30 and 31 of the response brief filed by the appellee contain citations to a document that was not admitted in evidence. The record will reflect in the citations contained on those pages are citations to Trial Exhibit 57, which is located at C3736. The record also reflects that there was an Exhibit 58, which is located at C3745. Exhibits 57 and 58 were duplicates of the same email chain. So 57 was an email chain from June 18, 2014. 58 also was that same email chain. There were two duplicates. On August 2nd of 2018, the trial court entered an order, which is located at C2087, which indicated that the exhibit summary, attached the exhibit summary submitted by parties, and stated that the exhibits were admitted as stated on that summary. Exhibit 58, which is a duplicate of 57, was in fact admitted. In other words, quite candidly, counsel is correct. I cited the 57, which is a duplicate of 58, which was admitted into evidence. Again, I do have those citations. Just so the panel is aware, the emails that were cited to were admitted into evidence, but they were admitted as Exhibit 58, not 57. I just wanted to make sure that the panel was aware of that. More generally, as counsel had addressed, and obviously as the court is aware, the case was remanded ultimately for a determination of damages, and the court, in its remand order, instructed the trial court to make determinations based on breach of contract, including the amounts of base rent, additional rent, holdover rent, and late fees due, as well as the security deposits to be returned. With respect to fraud, the trial court was instructed to take into account the amounts that Jaime paid, or received, I'm sorry, versus the amounts that Jaime paid to Mr. Nomenboy during the relevant time period in question. Mr. Smith, can I ask you to address directly the late fees on remand as it relates to Hidden Grove and Mofattel? Yes, Your Honor. As I stated in the brief, first of all, counsel is correct. Exhibit 110A, which was admitted at trial, did include, I believe it was $50 a month. First and foremost, that is accurate. As argued in the brief, unlike in Mofattel, the late fees sought were not compounded. The lease provides that 5% per month of the outstanding amount shall be charged, and ultimately the amount that was charged by the trial court was 5% per month of the outstanding balance. In other words, it didn't compound, as was argued in Mofattel, but that amount was charged successfully. In Mofattel, the court, Your Honor, had indicated that a 5-10% charge is standard, so I think that the 5% listed in the lease is appropriate. The lease on its face states that that amount shall be charged monthly, and that was the interpretation that the trial court ultimately enforced. 5-10% is acknowledged in Mofattel as a standard rate. Some of the other cases I cited in my brief, Collins and Tadros, likewise, talk about 2% per month, 12% per month. In light of that, I believe that the trial court's assessment was correct. Alternatively, as I stated in my brief, and again, strictly in the alternative, should the court find that 5% per month constitutes an unenforceable penalty, I would ask that the panel still enforce a flat 5% charge as the court did in Mofattel. Now, with respect to damages specifically, as the court's aware, the determination of damages won't be set aside unless it's manifestly erroneous. Absolute certainty isn't required. There only needs to be an adequate basis in the record. I would submit to the panel that the judgment amounts that were awarded by the trial court are supported by the record. With respect to the fraud damages that were awarded, the trial court ultimately found that the amounts paid by one of the tenants, Shalash, did not exceed the amounts that Jaime ultimately paid to Noman Boyce, so the trial court did not award any damages with respect to that particular property. With respect to La Hacienda, the La Hacienda property, there's a Supermercado property and La Hacienda property. With respect to the La Hacienda property, the trial court ultimately determined that a total of $198,000 was received in rent between the tenants identified as Jasso and Duffy. The trial court's basis for imputing or finding that $120,000 of that was paid by Jasso was effectively the lease that Jasso had executed was in June of 2014. He stayed in the property for approximately 20 months and that conclusion is likewise supported by Amber Duffy's testimony that I cited in the brief as well. The court imputed that Jasso made those payments during that time period. Now, I recognize that counsel raised this in his brief. Counsel is correct that the only, I guess I'll say direct evidence as to what Jasso paid is Mr. Jaime's testimony that he received approximately $36,000 from Jasso. Again, I would remind the court that the trial court very poignantly found that Mr. Jaime was, quote, not at all credible. So I think that the trial court was within its discretion to disregard that testimony and based upon the facts and circumstances before it, draw the inference that the rent, excuse me, during this time period was paid. With respect to Duffy, Ms. Duffy did testify at trial and she did testify that when she moved in in February of 2016, she paid $13,000 and the lease required that monthly rent of $6,500 be paid as well as a security deposit, I believe it was approximately $26,000, but there was an initial payment toward that deposit required of $6,500. In essence, her lease said that upon move-in she had to pay for February and she also had to make an initial $6,500 payment toward her deposit. She testified that she made that payment in the amount of $13,000. Then she also testified that she paid for 11 months' worth of rent. So based on the testimony that was, and then she also testified as well that on January 21st or 2nd, I believe it was a quote from the testimony, ultimately the locks were changed and she stopped occupying the property. So based upon the testimony that Ms. Duffy gave with respect to what the trial court determined she paid, I think that that is well supported by the evidence that was presented. We effectively have a lease that says $13,000 is due on the front end. Ms. Duffy made that payment. Ms. Duffy also testified that she paid for 11 months' worth of rent. 11 months would take us from February through December. She did not pay in January. There was a situation where she ultimately did not have possession of the property anymore at the end of January. But the point is that that testimony, I'm sorry, that $78,000 that the trial court found that Duffy had paid, I think is well supported by Ms. Duffy's direct testimony. And so I don't think that the trial court abused its discretion or otherwise entered a manifestly erroneous judgment by determining that a total of $198,000 was paid during the time period between Jasso and Duffy. And as stated in my brief and in the trial court's judgment, a total of $111,964 was paid by Mr. Jaime during that period. The difference was ultimately the amount that was assessed under the fraud count by the trial court. With respect to the contract damages, in evidence were Exhibit 110A, which is included in the appendix of Appellant's brief, as well as 127A, which provided the underlying calculations that Mr. Nomenvoy had made with respect to common area maintenance charges, taxes, insurance, and things of that nature. Again, the trial court found that Mr. Nomenvoy was credible, and the trial court therefore was within its discretion to take those exhibits and that evidence at face value and effectively use those numbers in determining the contractual amount to be assessed. And counsel is correct that in connection with certain arguments and things of that nature, a non-admitted Exhibit 110 was attached for demonstrative purposes only. And I think a review of 110A and the 110 that was submitted for demonstrative purposes only will show that while there are very slight differences in the amounts listed as due and paid and what the shortages are, those are nominal at best. And ultimately, and I've got the math here, I don't want to go through every single line item, but at the end of the day, looking at the two next to each other, the numbers are almost identical. And quite candidly, the purpose for, in part at least, for using that 110 in conjunction with 110A was to demonstrate what had been paid through March for purposes of ultimately determining liability for the La Hacienda space through March of 2019. Which I'll get to momentarily, but I would also point out that the trial court, in connection with counsel's motion to reconsider, likewise ultimately ruled that I believe the exact language was the existence or non-existence of 110 makes no difference to the court's conclusions. And I think that that is reflected by the fact that 110A and 110, again the numbers are almost exactly identical. With respect to, one thing I did, and I know I'm running a little low on time here, but one thing I did want to address was the issue of the taxes. I don't believe that the lease language in the contract documents make clear that the amount paid in 2013 was not due. Counsel's position is that the tax bill for 2014 due in 2015 was ultimately what was supposed to be paid. I don't think the evidence supports that. Again, going back to the preliminary issue I addressed at the beginning of the argument, the emails between the parties as well as the language of the documents themselves are not clear and I think it shows quite conclusively that it was intended that Mr. Nolman would be compensated for the amounts that he in fact paid in 2013. Counsel mentioned in his argument that it is not common for that to occur, but I think that the record reflects as well that this transaction was certainly anything but common. I recognize that, I recognize in an arm's length commercial landlord and tenant transaction. Yes, that may be commonly what is done, but this was not that. This was a very complex series of transactions and occurrences that ultimately led up to the contract between the parties. I see my time is up. Are you serious?  I do not. Mr. Smith, thank you very much. Thank you very much. Mr. Urban, rebuttal. For the fraud claim for damages, the instruction to the trial court was directed to funds actually received. The only testimony was that it was $36,000. There was no other testimony that anything else was received other than $36,000 from Hasso to Jaime. The use of the lease to establish that something was paid, that is a brand new novel theory to me. People going to court, well I had this lease and I paid or I did not pay without any other evidence. It is sheer conjecture, it is speculation that it was paid. In this particular case, in the first matter before the appellate court, the facts of the case in regarding to Shalash established that he, Shalash remained in the parcel of the property for a number of months and did not pay anybody. That was established and then he left. That was not attributed to Jaime. The simple fact that there is no eviction on file to show that he was evicted does not establish that Hasso was there paying rent. Hasso could have left. There could have been no one there. There was no one there. How does he file an eviction? Additionally, in regards to this claim for security deposits, Duffy paid a security deposit because it is in the contract. There is nothing in the testimony of Duffy to establish that she paid a security deposit. She thought that the $13,000 she paid was rent and base rent. It wasn't a security deposit, but her testimony was such that the total amount she paid was what she paid and it wasn't enough to cover a security deposit. Same thing with Hasso. There is a claim that his contract required a security deposit. There is nothing to show that that security deposit was paid. There is nothing there to show that it wasn't or if he did pay it, that it wasn't repaid to him. There is nothing in the contract. It is just sheer speculation and congestion that it was paid. This is a fraud matter, so the court said you have to establish proof of your damage and it is not there. In regards to Muffet Hall, the landlord in that case wanted to have 5% each month. The trial court only allowed a one-time charge of 5%, meaning that you are late one month, you get hit with a 5% charge. The next month, you don't get hit with another 5% for that prior month. It is just 5%. It was a 10-month time where the rent was not paid and the amount of late fees incurred, if you look at it, it comes out to 5% as a one-time charge per month. Just like in the case in 2001. So that is the issue there. The extrapolation, there is more to it than simply I am going to extrapolate how much he paid each month and then we will figure out what is going on. Extrapolation in regards to the amount that is due and owing, it is not just what is paid, it is the items that go into the expenses. Each year taxes may go up or down, same thing with insurance and other charges. So you can't extrapolate it. I could not find any case that says you can extrapolate a contract case. I think what you are dealing with is simply conjecture and speculation again. That is absurd. Thank you very much. You are welcome to answer any questions. Court thanks both sides for a spirited argument. We will take the matter under advisement and render a decision in due course. Court is adjourned until the next argument. Thank you.